\_\_\_\_ ✓ FILED   \_\_\_ ENTERED
\_\_\_\_ LOGGED   \_\_\_\_\_ RECEIVED

12:31 pm, May 23 2023
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK THUMB DRIVE STORED AT ATF BALTIMORE FIELD DIVISION, 31 HOPKINS PLAZA, SUITE 500, BALTIMORE, MARYLAND 21201 | Case No. 1:23-mj-01380-JMC<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, David Cheplak, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, depose and state as follows:

### INTRODUCTION

1. On October 30, 2019, a federal grand jury sitting in the District of Maryland indicted Daniel WILLIAMS, Karon FOSTER, Rashaud NESMITH, and Jamai WELLS, in a four count indictment charging conspiracy to commit carjackings, in violation of 18 U.S.C. § 371; substantive carjacking, in violation of 18 U.S.C. § 2119; conspiracy to possess a firearm in furtherance of a violent crime, in violation of 18 U.S.C. § 924(o); substantive possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c).  SAG-19-486, ECF 9.  Most recently, the grand jury indicted WILLIAMS and others for conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d) on March 8, 2023.  ECF 255[1].  The matter is set for a 14-day jury trial starting June 12, 2023.

2. The Honorable J. Mark Coulson, United States Magistrate Judge for the District of Maryland signed an arrest warrant for WILLIAMS on October 31, 2019.  Agents arrested WILLIAMS at his state probation agent's office in Catonsville, Maryland on November 18, 2019.

---

[1] WILLIAMS and others were also indicted in a multi-count indictment charging conspiracy to interfere in commerce by robbery and substantive robbery counts in violation of 18 U.S.C. § 1951.  SAG-20-207.  The March 8, 2023 indictment incorporated SAG-20-207 with SAG-19-486.

Agents recovered WILLIAMS' key chain during a search incident to arrest. A thumb drive ("**Subject Device**") was attached to WILLIAMS' key chain. Agents seized the **Subject Device** and labeled it ATF evidence #108. Considering the most recent indictment charging WILLIAMS as a member of the conspiracy to participate in a racketeering enterprise, I believe there is probable cause to search the **Subject Device** for evidence of such.

3. I write this affidavit in support of a warrant pursuant to Federal Rule of Criminal Procedure 41 to authorize the search of the **Subject Device**. The **Subject Device** currently stored in a secure manner at the Baltimore Field Division of the ATF located at 31 Hopkins Plaza, Suite 500, in Baltimore, Maryland. The applied-for search and seizure warrant would authorize the forensic examination of the **Subject Device** as described in Attachment A, for the purpose of identifying electronically stored data listed in Attachment B. Any search of the **Subject Device** will occur in an office or laboratory setting on premises controlled by ATF or their authorized representatives.

4. The information set forth in this affidavit derives from my personal knowledge and observations, discussions with witnesses, other law enforcement officers, and my review of police reports and public records. All conversations and statements described in this affidavit are related in substance and in part unless otherwise indicated. I have not included every fact known to me concerning this investigation. Rather, I set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause.

5. Based on the facts set forth in this affidavit, I submit there is probable cause to believe that WILLIAMS and others conspired to participate in multiple acts of violence in violation of federal law to include 18 U.S.C. § 1962(d) (RICO Conspiracy; "**SUBJECT**

**OFFENSE**"). Therefore, probable cause exists to search the **Subject Device** for evidence, instrumentalities, contraband, or fruits of those crimes as described in Attachment B.

### AFFIANT BACKGROUND

6. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

7. I have been a Special Agent with ATF since 2007 and I am currently assigned to the ATF Baltimore Field Division, Group VII. I attended the Department of Homeland Security's Criminal Investigator Training Program and ATF's Special Agent Basic Training for a combined period of 26 weeks. I worked for two years as a federal police officer with the Federal Bureau of Investigation ("FBI") Police Unit before joining ATF.

8. I have previously participated in multiple investigations involving criminal conspiracies, use of a firearm in furtherance of drug trafficking and/or violent crime, federal controlled substance laws, arson and the illegal possession of firearms. I have participated in multiple investigations involving these offenses, been the affiant on search warrants related to these offenses and made arrests of suspects for these offenses and other violent crimes. I am familiar with the applicable federal statutes and the methods employed by those who perpetrate these acts. I know that individuals involved in armed robberies, carjacking, and criminal conspiracies often keep information related to the execution of the plan in electronic form stored in various items such as thumb drives, computers, cellphones, and other electronic devices.

### JURISDICTION

9. This Court has jurisdiction to issue the requested warrants because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711. *See also* 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

### PROBABLE CAUSE

10. Three cooperating witnesses[2] told agents that WILLIAMS was the "brains" of many of the carjackings and commercial robberies committed by the enterprise. CS-1 is a member of the enterprise and entered a plea of guilty in this case. I believe CS-1 has a juvenile conviction for Unauthorized Use of Motor Vehicle. CS-1 told agents WILLIAMS took him to "case" one of the robbery locations prior to CS-1 and other enterprise members robbing the store. CS-1 described his own involvement in the enterprise which consisted of executing WILLIAMS' plan to rob commercial establishments and commit carjackings. CS-1 further stated that WILLIAMS also drove enterprise members to the locations and victims to be robbed. WILLIAMS then would fence phones or other property taken from the locations and victims. CS-1 said the participating enterprise members would split the proceeds accordingly. CS-1 also said WILLIAMS usually carried a firearm with him during the execution of the robberies and carjackings.

11. CS-2 is also a member of the criminal enterprise and admitted to participating in carjackings, commercial robberies, non-fatal shootings and homicides. CS-2 entered a plea of guilty in this matter. CS-2 has adult convictions for burglary, theft and hand-gun possession. CS-2 said WILLIAMS picked the cars to be taken or the stores to be robbed and planned how to do

---

[2] All three cooperating witnesses admitted to participating in numerous robberies, carjackings, non-fatal shootings and homicides with other members of the enterprise, including WILLIAMS. Agents verified their information through other evidence recovered during the investigation to include text messages about the enterprise's activities, photographs, social media direct messages, video footage of commercial robberies committed by cooperating witnesses and other enterprise members, and historical cell site location data. All three witnesses are cooperating for a reduced sentence.

so. CS-2 also told agents that WILLIAMS often warned the group to change SIM cards and phone numbers to avoid law enforcement detection. CS-2 further corroborated CS-1's statements about WILLIAMS driving enterprise members to locations and victims; how the proceeds were divided; and admitted to committing dozens of carjackings and commercial robberies as members of the enterprise.

12. CS-3 is also a member of the criminal enterprise and entered a plea of guilty in this matter. CS-3 has a juvenile conviction for motor vehicle theft. CS-3 told agents that WILLIAMS dropped CS-3 and other enterprise members off at a victim's vehicle to carjack. CS-3 said some enterprise members had firearms and that WILLIAMS knew about the possession. CS-3 explained that all the enterprise members who committed the carjacking, including WILLIAMS met up afterwards to divide the proceeds.

13. All three cooperating witnesses told agents that WILLIAMS used other carjacked cars taken by enterprise members to commit other crimes to evade law enforcement.

14. Agents recovered text messages between WILLIAMS and other members the enterprise discussing the location of robbery proceeds, how to evade law enforcement, and location of firearms used by the enterprise. These messages corroborate the cooperating witnesses accounts. For example, one text message WILLIAMS sent to an enterprise member advised how to bleach a stolen car and how to destroy other evidence.

15. Based on my training, experience, and this investigation, I believe WILLIAMS was part of a sprawling racketeering enterprise conspiracy, that picked targets, coordinated dozens of robberies, fenced stolen goods, and switched vehicles and license plates to thwart law enforcement. I believe there is probable cause that the **Subject Device** contains documents, pictures, maps, contact lists, and other evidence of the enterprise's crimes.

16. The **Subject Device** has been in continuous ATF custody, stored in a secure manner since November 18, 2019. Accordingly, I believe that any information stored on the **Subject Device** continues to be available as originally stored. WILLIAMS has been in continuous federal custody pursuant to a detention hearing and has not asked for the return of the **Subject Device**.

### FORENSIC ANALYSIS OF ELECTRONIC COMMUNICATIONS DEVICES

17. Based on my training, I know that electronic devices such as thumb drives can store information for long periods of time. Similarly, things that have been viewed via the internet can be typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools. There is probable cause to believe that things that were once stored and later deleted from the **Subject Device** may still be stored on that device, for various reasons, as discussed in the following paragraphs.

18. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Subject Device** was used, the purpose of its use, who used it, and when.

19. There is probable cause to believe that this forensic electronic evidence might be stored within the **Subject Device** because data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the

6

attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

20. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

21. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

22. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

23. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

## CONCLUSION

24. Based on the information set forth in this affidavit, I believe that the **Subject Device** will contain evidence related to the criminal enterprise including communications between members, photographs of members and crimes committed, plans for robberies and other evidence.

Therefore, I believe that probable cause exists that within the **Subject Device**, there is evidence, fruits, and instrumentalities of the crimes of 18 U.S.C. § 1962(d) (conspiracy to participate in a racketeering enterprise).

25. There is good cause for the Court to authorize the requested searches at any time of the day or night. The **Subject Device** is already in law enforcement custody, and it is reasonable to allow law enforcement to execute the requested searches at any hour of the day, even during the evening or night, if doing so is convenient for the investigators or examiners. Because the **Subject Device** is already in law enforcement custody, there will be no prejudice to any other person from this request.

26. WHEREFORE, I respectfully request that the Court issue a search warrant for the **Subject Device** authorizing members of the ATF, and their authorized representatives, to search the property described in Attachments A to seize the information in Attachment B.

27. I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
David Cheplak
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on May 3, 2023.

_____
The Honorable J. Mark Coulson
United States Magistrate Judge
District of Maryland



**ATTACHMENT A**
**Property to be Searched**

The following **Subject Device** which is currently stored in a secure manner in the Baltimore Field Division of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), located at 31 Hopkins Plaza, Suite 500, in Baltimore, Maryland:

1) A black thumb drive recovered from WILLAIMS's key chain during a search incident to arrest and listed as ATF evidence #108.

    **ATTACHMENT B**
**Items to be Seized**

All records contained in the **Subject Device** described in Attachment A which constitute evidence of violations of 18 U.S.C. § 1962(d) (conspiracy to participate in a racketeering enterprise), including the following items, as outlined below:

1) All of the following:

   a. Digital images, videos and photographs that depict or relate to persons, locations and/or crimes under investigation;

   b. Voice recordings that refer or relate to the crimes under investigation;

   c. Lists of contacts/associates and related identifying information;

   d. Bank records, checks, credit card bills, account information, and other financial records;

   e. E-mails and other forms of digital communication with members of the conspiracy;

   f. Any and all documents related to crimes committed by and/or planned to be committed by members of the conspiracy;

   g. Any and all documents and/or images related to the illegal purchase and/or sale of firearms.

2) For the **Subject Device**:

   a. Evidence of who used, owned, or controlled the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat", instant messaging logs, photographs, and correspondence;

   b. Evidence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;
   c. Evidence of the lack of such malicious software;

d. Evidence of the attachment to the device of other storage devices or similar containers for electronic evidence;

    e. Evidence of counter forensic programs (and associated data) that are designed to eliminate data from the device;

    f. Evidence of the times the device was used;

    g. Passwords, encryption keys, and other access devices that may be necessary to access the device;

    h. Documentation and manuals that may be necessary to access the device or to conduct a forensic examination of the device;

    i. Contextual information necessary to understand the evidence described in this attachment.

3) With respect to the search of any of the items described above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by acomputer with the aid of computer-related equipment (including CDs, DVDs, thumb drives, flash drives, hard disk drives, or removable digital storage media, software or memory in any form), the search procedure may include the following techniques (the following is a non- exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

    a. surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains andopening a drawer believed to contain pertinent files);

    b. "opening" or cursorily reading the first few "pages" of such files in order todetermine their precise contents;

    c. "scanning" storage areas to discover and possible recover recently deleted files;

    d. "scanning" storage areas for deliberately hidden files; or

    e. performing key word searches or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language

      contained in such storage areas exist that are intimately related to the subject matter of the investigation.

4) If after performing these procedures, the directories, files or storage areas do not reveal evidence of the specified criminal activity, the further search of that particular directory, file or storage area, shall cease.

5) With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable. If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review. The investigative team will take no further steps regarding any review of information so segregated absent further order of the court. The investigative team may continue to review any information not segregated as potentially privileged.